Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ÁNGEL FELIPE SÁNCHEZ ACABÁ Y OLGA IRIS DELGADO PÉREZ<br><br>**Apelantes**<br><br>V.<br><br>JAZMÍN PADILLA PADILLA P/C DEL LCDO NOEL E GONZALEZ ABELLA, JUAN DEL PUEBLO POSIBLE HEREDERO DE JAZMIN PADILLA PADILLA, JUANA DEL PUEBLO POSIBLE HEREDERA DE JAZMIN PADILLA PADILLA<br><br>**Apelados** | TA2025AP00599 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de CABO ROJO<br><br>Civil. Núm. CB2025CV00031<br><br>Sobre:<br><br>Compraventa |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de diciembre de 2025.

El 26 de noviembre de 2025, el el Sr. Ángel Felipe Sánchez Acabá (señor Sánchez) y la Sra. Olga Iris Delgado Pérez (señora Delgado) (en conjunto, los apelantes) comparecieron ante nos mediante una Apelación intitulada *Alegato de la Parte Apelante* y solicitaron la revisión de una *Sentencia* que se dictó y notificó el 14 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Demanda* presentada por los apelantes.

Por los fundamentos que discutiremos a continuación, ***confirmamos*** el dictamen apelado.

## I.

El 21 de enero de 2025, los apelantes presentaron una *Demanda* sobre ratificación de compraventa contra la señora Jazmín Padilla Padilla (señora Padilla).[1] Alegaron que, el 16 de octubre de 2007, el señor Sánchez y su esposa, la Sra. Rosa Margarita Raíces Vélez, adquirieron una propiedad ubicada en el municipio de Cabo Rojo mediante la escritura núm. 48, otorgada ante el notario Luis Antonio González Ríos. Indicaron que dicha propiedad fue vendida por la señora Delgado, quien a su vez la había adquirido previamente mediante la escritura número 56, otorgada el 2 de marzo de 2005 ante el notario Raúl J. Berríos Álvarez.

Sostuvieron que el notario Luis Antonio González Ríos presentó en el Registro de la Propiedad, Sección de San Germán, la copia certificada de la escritura núm. 48, la cual quedó presentada al asiento 1470 del Diario 757, el 24 de octubre de 2007. Adujeron que, como parte de dicha presentación, se acompañó un Estudio de Título de la propiedad objeto de la transacción, el cual fue incluido como anejo.[2] No obstante, expusieron que, posteriormente, se advirtió que la escritura núm. 56 no había sido presentada previamente en el Registro, lo cual era indispensable para mantener el tracto sucesivo. Indicaron que, aunque dicha escritura fue presentada tardíamente en el año 2011, el Registrador notificó defectos que impidieron su inscripción.

Asimismo, señalaron que de la escritura núm. 56 surge que la propiedad fue vendida por la sucesión Padilla Santiago, pero que no comparecieron todos los herederos, ya que los únicos comparecientes fueron los siguientes: (1) María Santiago Soto, viuda; (2) Micheal Olivarria Padilla, representado por Martín

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.
[2] Surge del Estudio de Título anejado, que la señora Padilla ostenta participación hereditaria consistente en un tercio (1/3) de la legítima, un tercio (1/3) de la mejora y un tercio (1/3) de la libre disposición, lo que la convierte en parte indispensable para completar el tracto registral.

Rodríguez Santiago; (3) Richard Padilla Santiago, representado por Martín Rodríguez Santiago; y (4) Jeannete Padilla Santiago.

Por otro lado, indicaron que, al momento de la presentación para inscripción y hasta el presente, la propiedad permanecía inscrita a nombre de la sucesión Padilla Santiago, y que la señora Padilla no compareció ni otorgó su consentimiento en la escritura núm. 56, razón por la cual el Registrador notificó defectos tanto en dicha escritura como en la escritura número 48, impidiendo la inscripción de la titularidad del señor Sánchez.

Manifestaron que desconocían el paradero de la señora Padilla, pese a haber realizado gestiones razonables para localizarla. Añadieron que la esposa del señor Sánchez falleció en octubre de 2012, por lo que resultaba indispensable lograr la correcta inscripción de la titularidad de la propiedad para posteriormente adjudicar la participación correspondiente a sus herederos.

Ante la imposibilidad de subsanar voluntariamente los defectos registrales, solicitaron que se ordenara a la señora Padilla a firmar una escritura de ratificación de la compraventa consignada en la escritura núm. 56. En la alternativa, solicitaron que, en caso de incomparecencia o rebeldía, el Tribunal autorizara al Registrador de la Propiedad a practicar la inscripción correspondiente o que se ordenara a un alguacil firmar la escritura de ratificación en nombre de la señora Padilla, con el fin de completar el tracto sucesivo y permitir la inscripción de la escritura número 48.

Posteriormente, el 4 de febrero de 2025, se enmendó la Demanda con el único fin de incluir la descripción completa de la propiedad objeto de esta controversia.[3] Además, se anejó las copias certificadas de las escrituras núm. 48 y 56.

---

[3] *Véase*, Entrada Núm. 7, SUMAC TPI.

Así las cosas, el 28 de febrero de 2025, se expidió el emplazamiento por edicto dirigido a la señora Padilla.[4] El 3 de abril de 2025, los apelantes presentaron una solicitud de anotación de rebeldía en contra de la señora Padilla.[5] Sin embargo, el 7 de abril de 2025, el TPI emitió una *Resolución Interlocutoria* que se notificó el 7 de abril de 2025, declarando No Ha Lugar la referida solicitud ya que no había transcurrido el término que disponía la Regla 10.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.1 para presentar la alegación responsiva.[6]

Así las cosas, el 7 de abril de 2025, los apelantes presentaron nuevamente una *Solicitud de Anotación de Rebeldía y Sentencia en Rebeldía.*[7] En esta, indicaron que la señora Padilla no había presentado su alegación responsiva en el término de treinta (30) días que disponía la Regla 10.1 de Procedimiento Civil, *supra*, por lo que correspondía anotarla en rebeldía. Además, solicitaron que se dieran por ciertas las alegaciones de la Demanda y se dictara sentencia en rebeldía. Atendida esta solicitud, el 16 de abril de 2025, el TPI dictó y notificó una *Resolución Interlocutoria* en la cual le ordenó a los apelantes a acreditar si la señora Padilla estaba viva y que, de no estarlo, que informaran cuáles eran sus sucesores.[8]

En cumplimiento con la referida *Orden*, el 21 de abril de 2025, los apelantes presentaron una moción informando que desconocían si la señora Padilla estaba viva o no y que tampoco tenían información de su paradero.[9] Señalaron que, antes de radicar la Demanda habían realizado gestiones para conseguir información sobre la señora Padilla, pero que estas fueron infructuosas ya que

---

[4] *Véase*, Entrada Núm. 11, SUMAC TPI.
[5] *Véase*, Entrada Núm. 12, SUMAC TPI.
[6] *Véase*, Entrada Núm. 13, SUMAC TPI.
[7] *Véase*, Entrada Núm. 14, SUMAC TPI.
[8] *Véase*, Entrada Núm. 15, SUMAC TPI.
[9] *Véase*, Entrada Núm. 16, SUMAC TPI.

la compraventa del presente caso se llevó a cabo en el año 2005 y ellos no conocían a los vendedores ni a la señora Padilla.

Atendida esta moción, el 22 de abril de 2025, el TPI emitió y notificó una *Resolución y Orden* mediante la cual ordenó que se enmendara la Demanda nuevamente con el fin de incluir a los posibles herederos de la señora Padilla para poder adquirir jurisdicción sobre estos.[10] Los apelantes cumplieron con esta orden y expidieron los emplazamientos por edictos dirigidos a los posibles herederos de la señora Padilla.[11]

Posteriormente, el 17 de junio de 2025, los apelantes presentaron una *Solicitud de Anotación en Rebeldía y Sentencia en Rebeldía.*[12] Indicaron que, los co-demandados habían sido debidamente emplazadas por edicto y no habían presentado contestación a la demanda a pesar de haber pasado más de treinta (30) días desde la publicación de los emplazamientos por edicto. A esos efectos, argumentaron que procedía anotarlos en rebeldía. Además, solicitaron que se dieran como ciertas las alegaciones de la Demanda y a su vez, se dictara sentencia en rebeldía.

En respuesta, el 24 de junio de 2025, el TPI dictó una *Orden* que se notificó el 27 de junio de 2025, concediéndoles a los apelantes un término de diez (10) días para cumplir con lo siguiente:

> Conforme al Estudio de Título anejado a la presentación (ENTRADA 1), provea la parte demandante evidencia que establezca como se dispuso de la participación hereditaria de la demandada, Jazmín Padilla Padilla a los fines de evaluar el negocio jurídico y el documento público que se pretenda ratificar en la presente causa de acción.

El 2 de julio de 2025, los apelantes presentaron una *Moción en Cumplimiento de Orden.*[13] En primer lugar, puntualizaron que no tenían evidencia de lo solicitado dado a que no surgía de la

---

[10] *Véase,* Entrada Núm. 18, SUMAC TPI.
[11] *Véase,* Entrada Núm. 19, SUMAC TPI.
[12] *Véase,* Entrada Núm. 26, SUMAC TPI.
[13] *Véase,* Entrada Núm. 28, SUMAC TPI.

compraventa mediante la cual se vendió la propiedad a la señora Delgado. Indicaron que, el Art. 59 de la Ley Núm. 210-2015, según enmendada, conocida como *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6086 (Ley Núm. 210-2015), dispone que puede inscribirse la venta de un bien perteneciente a un causante directamente a nombre del comprador cuando todos los herederos comparecen, declaran ser los únicos con derecho y consienten la venta, sin que sea necesaria una partición previa, siempre que conste el título de herederos.

En vista de lo anterior, plantearon que, este precepto permitía que la comunidad hereditaria vendiera la propiedad aun cuando esta continuara inscrita a nombre del causante. Añadieron que, en estos casos, la venta era válida y registrable siempre que todos los herederos comparecieran conjuntamente como vendedores y otorgaran su consentimiento a la venta a un tercero. Además, destacaron que no se requería desglosar una partición formal en la escritura de compraventa, ya que la inscripción se realizó como una venta otorgada por los herederos del titular registral fallecido.

Por otro lado, expresaron que la presente Demanda se instó precisamente para obtener la ratificación del consentimiento de la señora Padilla y de sus posibles herederos, siendo este el único mecanismo legal disponible para que pudiesen, luego de veinte (20) años, inscribir la propiedad a sus respectivos nombres y completar el tracto registral a favor del señor Sánchez.

Finalmente, indicaron que habiendo sido las partes demandadas debidamente emplazadas por edicto y no habiendo contestado la demanda dentro del término legal treinta (30) días desde la publicación del emplazamiento, y cumplidas las exigencias de notificación conforme a la Regla 4 de Procedimiento Civil, 32 LPRA Ap. V, R.4, procedía la anotación de rebeldía de estos y la correspondiente sentencia en rebeldía.

El 22 de julio de 2025, el TPI emitió y notificó una *Resolución Interlocutoria* anotando en rebeldía a la señora Padilla y a sus posibles herederos. Posteriormente, el 14 de agosto de 2025, el TPI emitió y notificó una *Sentencia* luego de que el caso quedó sometido por el expediente.[14] En primer lugar, realizó las siguientes determinaciones de hechos:

1. El demandante Angel Felipe Sánchez Acabá compró mediante escritura de compraventa número 48 ante el notario público Luis Antonio González Rios, el 16 de octubre de 2007, a la Sra. Olga Iris Delgado Pérez, (también demandante) el siguiente inmueble: URBANA: Solar número dos (2) del Bloque G de la Urbanización Altos de Samán radicado en el Barrio Llanos Costas de Cabo Rojo, Puerto Rico, con una cabida superficial de mil doscientos seis puntos doscientos cinco (1,206.205) metros cuadrados, equivalentes a cero punto tres mil setenta y uno (0.3071) cuerdas. En lindes por el Norte con el solar número uno (1); por el Sur, con solar número tres (3); por el Este con remanente de la finca principal y por el Oeste con calle G de uso público.

2. La demandante Olga Iris Delgado Pérez, compró mediante escritura pública número 56, ante notario público Raúl J. Berrios Álvarez, el 2 de marzo de 2005, a los vendedores que se describirán a continuación, el inmueble descrito en el inciso anterior.

3. En la escritura de compraventa número 56, comparecieron como vendedores las siguientes personas: María Santiago Soto; Michael Olavarría Padilla, representado por Martín Rodriguez Santiago, autorizado mediante poder general número 8, otorgado el 4 de agosto de 2000 ante la notaria Elba I. Vazquez Dávila; Richard Padilla Santiago, representado por Martín Rodríguez Santiago, mediante poder general número 7, otorgado el 4 de agosto de 2000 ante la notaria Elba Vázquez Dávila y Jannette Padilla Santiago.

4. Que la propiedad según consta en el estudio de título, presentado en el anejo 3 de la petición, se encuentra inscrita en el folio 48 del tomo 620 de Cabo Rojo, Registro de la Propiedad de San Germán, y a nombre de una sucesión compuesta por: María Santiago Soto (viuda); Michael Olivaría Padilla;

---

[14] *Véase*, Entrada Núm. 30, SUMAC TPI.

Jeannette Padilla Padilla y Jazmín Padilla Padilla (demandada).

5. Que en la escritura número 56, se establece que la propiedad fue vendida por la sucesión Padilla Santiago, sin estar presente en dicho acto un miembro de la sucesión; a saber, la demandada Jazmín Padilla Padilla.

6. Que al momento del demandante, Angel Felipe Sánchez Acabá, presentar su escritura número 48 al Registro de la Propiedad de San Germán, por conducto del notario autorizante Lcdo. Luis Antonio González Ríos, el Registrador solicitó la escritura número 56 para el tracto sucesivo.

7. Que al presentarse la escritura número 56, el registrador notificó un defecto relacionado con dicha escritura. Una de las herederas, Jazmín Padilla Padilla no estuvo presente en el otorgamiento de la escritura, y denegó la inscripción en favor del demandante Angel Felipe Sánchez Acabá por defectos tanto en la escritura número 56 como en la escritura número 48.

8. Que la parte demandante ante la ausencia de la demandada Jazmín Padilla Padilla para la ratificación voluntaria de la escritura de compraventa número 56, acuden al tribunal para solicitar la ratificación del negocio jurídico a los fines del demandante lograr la inscripción del inmueble a su favor.

Luego, conforme a las determinaciones de hechos, la prueba documental presentada y el derecho aplicable, declaró No Ha Lugar la Demanda presentada por los apelantes bajo los siguientes fundamentos:

En el caso que nos ocupa la demandante Olga Iris Delgado Pérez mediante la compraventa efectuada en la Escritura Número 56, adquirió la partición abstracta e indivisa de los herederos que comparecieron al otorgamiento de la escritura. De esa misma forma, la demandante Olga Iris Delgado Pérez, en la compraventa efectuada en la Escritura Número 48 vendió al demandante Ángel Felipe Sánchez Acabá las particiones de los herederos en dicho inmueble.

Por tanto, ante la ausencia de la demandada Jazmín Padilla Padilla al momento de otorgarse la escritura de compraventa número 56, y ante el hecho de que no se

dispuso de su participación hereditaria, y tampoco ha sido satisfecha, el tribunal está impedido de conformidad con el estado de derecho vigente, ratificar dicha compraventa.

En desacuerdo con esta determinación, el 22 de octubre de 2025[15], los apelantes presentaron una solicitud de reconsideración.[16] Atendida esta solicitud, el 27 de octubre de 2025, el TPI emitió una *Resolución Interlocutoria* que se notificó el 28 de octubre de 2025, declarando No Ha Lugar la solicitud de reconsideración.[17] Aún inconformes, el 26 de noviembre de 2025, los apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

**Erró el honorable TPI al dictar sentencia desestimando la demanda y negarse a ratificar la compraventa porque aún en el evento de que se pudiera interpretar que existe un lenguaje que hizo referencia a una venta previa de participación, sin la escritura de adjudicación y partición, esta aseveración sería nula, y la transacción pretendida de la transferencia del inmueble a la apelante delgado mediante la Escritura 56 bajo el Artículo 95 de la Ley Hipotecaria (1979) sería subsanable mediante la ratificación de la parte apelada, y en su defecto, mediante la ratificación judicial que se persigue en este caso en el cual dicha parte está en rebeldía. No existe evidencia alguna de una partición válida en el presente caso.**

**Erró el honorable TPI al dictar sentencia desestimando la demanda cuando se tiene a unos demandados en rebeldía, por lo que se aceptan los hechos de la demanda como ciertos bajo la Regla 45 de las de procedimiento civil, y sin aun conceder una vista para que la parte apelante se expresara.**

**Erró el honorable TPI al dictar sentencia desestimando la demanda en rebeldía al negarse a ratificar la compraventa por ignorar la intención de la Escritura 56 y concluir que la compraventa en dicha escritura fue una compraventa de participaciones en vez de una venta de un bien inmueble en donde se pagó el precio total del mismo, y que con la comparecencia de la parte demandada hubiera sido suficiente para ratificar la transacción de la transferencia del inmueble.**

---

[15] La sentencia apelada fue publicada por edicto el 7 de octubre de 2025. Por lo tanto, los apelantes tenían quince (15) días a partir de esa fecha para presentar su solicitud de reconsideración.

[16] *Véase*, Entrada Núm. 37, SUMAC TPI.

[17] *Véase*, Entrada Núm. 39, SUMAC TPI.

**Erró el honorable TPI al dictar sentencia desestimando la demanda y negarse a ratificar la compraventa y alegar que hubo una partición sin evidencia alguna y a base de una presunción injusta e insostenible de que a la parte demandada/apelada no se le pagó lo que le correspondía al momento de la venta de la propiedad hace 20 años cuando no existe evidencia alguna de ello, y por el contrario, se tiene la Escritura 56 que establece lo contrario.**

Cabe precisar que, junto al recurso de epígrafe, los apelantes presentaron una *Moción Informativa sobre Radicación de Apelación* en la cual en cumplimiento con la Regla 14 y 15 de nuestro reglamento nos informaron que, no tenían dirección última ni información alguna de la parte demandada/apelada en rebeldía. Por ende, indicaron que no se les podía enviar copia de este recurso. Posteriormente, el 12 de diciembre de 2012, presentaron otra moción anejando una declaración jurada para hacer constar lo antes expuesto, entre otras cosas.

II.

-A-

La apertura de la herencia a la que estén llamados varios herederos, da vida a la comunidad hereditaria mientras que la partición o división concluye la misma. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral,* 8va ed., Madrid, Ed. Reus, 1978, T. VI, Vol. I, pág. 296. Esta comunidad hereditaria surge al momento en que dos o más herederos concurren en una sucesión. *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).

Ahora bien, la partición de la comunidad hereditaria es el mecanismo mediante el cual se le confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados, extinguiéndose así la indivisión de la comunidad. Art. 1021 del Código Civil de 1930, 31 LPRA sec. 2901. Sin embargo, mientras no se realicen las operaciones de partición, ninguno de los herederos posee un derecho concreto o determinado sobre parte alguna de la herencia que le permita disponer libremente de ella. *Herederos de*

*Collazo v. Registrador*, 172 DPR 776, 784 (2007). A través de este procedimiento, se extinguirá la comunidad hereditaria, transformándose así las cuotas abstractas que poseen los herederos sobre el caudal relicto, en titularidades concretas sobre bienes determinados.

Sin embargo, lo antes expresado no implica que cada coheredero, antes de la partición, pueda disponer o gravar de forma alguna de una cuota específica sobre un bien que forme parte de la herencia. *Soc. de Gananciales v. Registrador,* 151 DPR 315, 320 (2000). En varias ocasiones, el Tribunal Supremo ha señalado que "se puede enajenar o gravar parte o la totalidad de un bien específico de la herencia si todos los coherederos en la comunidad hereditaria se ponen de acuerdo y llevan a cabo el negocio jurídico, ya que 'la suma de los derechos de los condueños equivale al de un propietario singular' ". *Kogan v. Registrador*, 125 DPR 636, 652 (1990). Por lo tanto, nuestro ordenamiento permite que los miembros de la comunidad hereditaria puedan vender o gravar un bien específico de la herencia antes de que se efectúe la partición, siempre y cuando, exista el consentimiento unánime de todos los coherederos.

En apoyo a lo anterior, el Art. 131 de la Ley Núm. 210-215, 30 LPRA sec. 6186 dispone, en lo pertinente, lo siguiente:

> Mientras no se haya realizado la partición y adjudicación de la herencia, aún en aquellos casos en que se trate de un solo bien o aunque la cuota de cada heredero pueda determinarse, solamente podrá inscribirse a favor de cada heredero su derecho hereditario sobre una participación abstracta e indivisa en el caudal relicto. [...]
>
> La inscripción de participaciones específicas a favor de cada comunero se practicará en virtud de resolución judicial final y firme o escritura pública con la comparecencia y consentimiento de todos los herederos y legatarios si los hubiera, a la partición y adjudicación de todo o parte del caudal. [...]
> Sólo se podrán inscribir enajenaciones o gravámenes sobre cuotas específicas cuando éstas hayan sido previamente adjudicadas.

La adjudicación no será necesaria en las siguientes circunstancias:

1. Cuando comparecen todos los coherederos o interesados a enajenar o gravar la totalidad de su derecho hereditario a favor de un tercero.

2. Cuando todos los coherederos o interesados venden la totalidad de su derecho hereditario a favor de un comunero soltero o casado bajo el régimen de separación de bienes.

3. Cuando uno o más de los coherederos transfiere su derecho hereditario o participación abstracta e indeterminada en la totalidad de la herencia.

4. Cuando una persona haya adquirido todos los derechos hereditarios.

En síntesis, la estructura legal y jurisprudencial aplicable exige: (1) consentimiento unánime para la enajenación o ratificación de un bien concreto del caudal relicto; (2) prueba suficiente de la participación y existencia de todos los titulares hereditarios; y ((3) la utilización de los mecanismos sucesorios correspondientes, como la partición, cuando falta alguno de los coherederos o su intervención no puede ser acreditada.

**-B-**

La Regla 45 de Procedimiento Civil, 32 LPRA AP. V "permite que el tribunal *motu proprio*, o a solicitud de parte, le anote la rebeldía a la otra por no comparecer a contestar la demanda o a defenderse como estipulan las reglas, o como sanción". *Mitsubishi Motor v. Lunor y Otros*, 212 DPR, 819-820 (2023). El propósito de este mecanismo es evitar que la dilación se utilice como estrategia de litigación. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011). En específico, la Regla 45.1 de Procedimiento Civil, *supra*, establece que:

Cuando una parte contra la cual se solicite una sentencia para conceder un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o la Secretaria anotará su rebeldía.

El tribunal, a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).

**Esta anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).**

La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía. (Énfasis suplido)

Como podemos observar, la anotación de rebeldía conlleva la consecuencia jurídica de que se darán por admitidos todos los hechos bien alegados en la demanda o en la alegación formulada en contra de la parte en rebeldía. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 590 (2011). Sin embargo, nuestro Tribunal Supremo ha establecido que "el hecho de que se haya anotado la rebeldía no es garantía *per se* de una sentencia a favor del querellante." *Vizcarrondo Morales v. MVM, Inc.. et al.,* 172 DPR 921, 937 (2008). Por lo tanto, el tribunal quedará autorizado a dictar sentencia "si ésta procede como cuestión de derecho". *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 590 (2011).

Asimismo, es precisa señalar que, el mecanismo de anotación de rebeldía no pretende conferirle ventaja a la parte demandante de modo tal que pueda obtener una sentencia sin celebración de una vista. Por lo tanto, la Regla 42.5(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 45.2(b), establece que el Tribunal, de estimarlo necesario, podrá celebrar una vista para comprobar la veracidad de cualquier aseveración mediante prueba o investigación adicional previo a dictar sentencia en rebeldía.

**-C-**

El Art. 15 de la Ley Núm. 75 de 2 de julio de 1987, según enmendada, conocida como Ley Notarial de Puerto Rico, 4 LPRA sec. 2033, dispone que todo instrumento público debe contener no solo los elementos propios del negocio jurídico que se otorga, sino también sus antecedentes, los hechos presenciados y consignados por el notario y las advertencias legales pertinentes. Estos requisitos persiguen garantizar la corrección formal del instrumento y la

adecuada protección de la voluntad de las partes que comparecen al acto notarial.

En particular, el inciso (f) de dicho artículo impone al notario el deber de realizar verbalmente a los otorgantes las reservas y advertencias legales aplicables al momento del otorgamiento, de modo que estos concurran al acto con plena conciencia informada, comprendiendo el alcance, los efectos y las posibles consecuencias del negocio jurídico. Asimismo, exige que el notario consigne expresamente en la escritura aquellas advertencias que, por su importancia y conforme a su juicio prudente, deban detallarse, tomando en consideración el derecho positivo, la jurisprudencia y el contenido específico del negocio jurídico que se formaliza. Íd.

### III.

La parte apelante sostiene, en primer lugar, que el TPI erró al desestimar la Demanda y negarse a ratificar la compraventa contenida en la Escritura Núm. 56, pues aún de entenderse que existía un defecto por ausencia de escritura de adjudicación y partición, dicho defecto era subsanable conforme al Art. 95 de la Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como *Ley Hipotecaria y del Registro de la Propiedad*, 30 LPRA sec. 2316, mediante ratificación voluntaria o judicial, máxime cuando la parte apelada se encontraba en rebeldía y no existía evidencia de una partición válida. Sin embargo, dicho planteamiento descansa en una disposición legal que fue derogada con la aprobación de la Ley Núm. 210-2015, *supra*. El estatuto vigente, específicamente el Art. 131 de la Ley Núm. 210-2015, *supra*, reafirma el principio de que, tratándose de bienes pertenecientes a una comunidad hereditaria indivisa, la enajenación válida de un bien específico requiere el consentimiento unánime de todos los coherederos.

Conforme surge de las propias alegaciones de la Demanda y de los documentos anejados, es un hecho incontrovertible que una

de las herederas, la señora Padilla, no compareció ni estuvo representada al momento de otorgarse la referida escritura de compraventa. Más aún, no existe evidencia alguna en el expediente que permita establecer cómo se dispuso, adjudicó o satisfizo su participación hereditaria en el inmueble. Ante esa ausencia, el TPI correctamente concluyó que faltó el consentimiento unánime indispensable para la enajenación válida de un bien específico perteneciente a una comunidad hereditaria indivisa.

Nuestro ordenamiento jurídico es claro en establecer que, mientras no se haya realizado la partición, los coherederos no ostentan derechos concretos sobre bienes determinados del caudal relicto, y que la venta o gravamen de un bien específico antes de la partición solo es válida cuando existe el consentimiento de todos los coherederos, pues la suma de sus derechos equivale al de un propietario singular. *Kogan v. Registrador*, supra, pág. 652. En ausencia de dicho consentimiento unánime, la transacción carece de un elemento esencial para su validez. Se trata, por tanto, de un defecto sustantivo y no meramente formal, que no puede ser subsanado mediante ratificación judicial, ya que esta no puede suplir la inexistencia de consentimiento ni la falta de prueba sobre la disposición de la participación hereditaria de una coheredera ausente. Por ello, no procedía la ratificación solicitada.

En su segundo señalamiento de error, la parte apelante argumenta que el TPI erró al desestimar la Demanda, a pesar de que existían demandados en rebeldía y sin concederle una vista para que pudiera expresarse. A su juicio, la anotación de rebeldía, conforme a la Regla 45 de Procedimiento Civil, *supra*, requiere que los hechos alegados se den por ciertos y que, previo a desestimar la causa de acción, el Tribunal le brinde la oportunidad de ser escuchada. Este planteamiento, sin embargo, desconoce el alcance jurídico de la anotación de rebeldía y la discreción que dicha regla confiere al

Tribunal. Si bien la rebeldía conlleva que se tengan por admitidas las alegaciones de hechos bien formuladas, ello no equivale, por sí solo, a que proceda automáticamente una sentencia favorable al demandante ni a que el tribunal esté obligado, en todos los casos, a celebrar una vista. Nuestro Tribunal Supremo ha sido enfático en señalar que la anotación de rebeldía no garantiza una sentencia a favor de quien reclama, sino que el tribunal debe evaluar si el remedio solicitado procede como cuestión de derecho. *Vizcarrondo Morales v. MVM, Inc. et al.,* supra, pág. 937; *Rivera Figueroa v. Joe's European Shop*, supra, 590.

En este caso, aun dando por ciertos los hechos alegados, el TPI estaba obligado a determinar si, conforme al derecho sucesorio y registral vigente, era posible ratificar una compraventa en la que no comparecieron todos los coherederos y respecto de la cual no existe evidencia de disposición de la participación hereditaria de uno de ellos. Al concluir que el remedio solicitado no procedía en derecho, el TPI actuó correctamente dentro de su facultad adjudicativa. Además, la ausencia de una vista no constituyó error, pues el defecto identificado era de naturaleza estrictamente jurídica y surgía del propio expediente, por lo que no existía controversia fáctica que requiriera dilucidación adicional.

En el tercer señalamiento de error, la parte apelante sostiene que el TPI erró al ignorar la intención de la Escritura Núm. 56 y al concluir que la transacción constituyó una compraventa de participaciones hereditarias en lugar de una venta del bien inmueble en su totalidad. No obstante, el TPI no ignoró la intención del instrumento público, sino que evaluó sus efectos jurídicos conforme al marco legal aplicable. Como mencionamos anteriormente, mientras no se haya efectuado la partición, los coherederos no ostentan derechos concretos sobre bienes específicos del caudal, sino participaciones abstractas e indivisas. Así, el TPI correctamente

determinó que la señora Delgado adquirió, mediante la Escritura Núm. 56, únicamente las participaciones abstractas de los herederos comparecientes, y que de igual forma transfirió dichas participaciones al señor Sánchez mediante la Escritura Núm. 48. La falta de comparecencia de la heredera, la señora Padilla, impidió, como cuestión de derecho, la transmisión válida de la totalidad del inmueble, independientemente de que se haya pagado un precio global por la transacción.

Finalmente, la parte apelante alega que el TPI erró al presumir injustamente que no se le pagó lo que le correspondía a la heredera ausente y al sostener que hubo una partición sin evidencia alguna. Este señalamiento no refleja correctamente lo resuelto por el TPI. En ningún momento el TPI determinó que existiera una partición, ni concluyó que la señora Padilla no hubiese recibido pago alguno. Lo que el TPI correctamente señaló fue que no surgía del expediente evidencia que permitiera establecer cómo se dispuso o satisfizo su participación hereditaria al momento de la venta. De hecho, el propio TPI concedió a la parte apelante un término específico para presentar evidencia sobre este aspecto medular, y la respuesta de la parte fue que no contaba con prueba alguna al respecto. Ante esa ausencia probatoria, el TPI concluyó, acertadamente, que estaba impedido de ratificar una compraventa que carecía del consentimiento de todos los coherederos y respecto de la cual no existía constancia de la disposición válida de la participación hereditaria de la señora Padilla.

En síntesis, el TPI aplicó correctamente el derecho sucesorio, hipotecario y procesal vigente. La falta de consentimiento unánime, la inexistencia de una partición o adjudicación válida, y la ausencia de evidencia sobre la disposición de la participación hereditaria de una coheredera ausente constituyen impedimentos jurídicos insalvables para la ratificación solicitada. Asimismo, la anotación de

rebeldía no obligaba al Tribunal a dictar sentencia a favor de la parte demandante cuando el remedio reclamado no procedía como cuestión de derecho. Por consiguiente, ninguno de los señalamientos de error fue cometido y procede confirmar la sentencia apelada.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones